UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| JEFFREY J. GORDON and VICKI GORDON,<br><br>    Plaintiffs,<br><br>    v.<br><br>UNITED STATES OF AMERICA,<br><br>    Defendant. | No. 4:15-cv-5073-SAB<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS** |

## INTRODUCTION

Defendant United States brings a second motion to dismiss Plaintiffs' complaint for malicious prosecution under the Federal Tort Claims Act on jurisdictional grounds. Because the government agent at issue acted with discretion and engaged in conduct susceptible to policy analysis, the discretionary function exception under 28 U.S.C. § 2680(a) applies and the Court has no jurisdiction to hear the case. The motion to dismiss is **granted with prejudice**.

## CASE HISTORY

Plaintiffs Jeffrey and Vicki Gordon, a married couple, filed suit in this Court on July 23, 2015, under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 1335(b), bringing claims against U.S. government agencies for (1) negligence, (2) negligent misrepresentation, and (3) negligent infliction of emotional distress,

related to the handling of a federal crop insurance program. Plaintiffs disputed the denial of a claim for crop insurance provided by the federal government and engaged in arbitration, which Plaintiffs won. Plaintiff Jeffrey Gordon was later indicted by the U.S. Attorney's Office, partially on the basis of an investigation by the U.S. Department of Agriculture ("USDA") led by USDA Inspector General agent Steve Tillotson. Plaintiff Jeffrey Gordon, and others, were brought to criminal trial as part of an alleged conspiracy by some potato farmers to defraud the insurance program. All charges were dismissed against Plaintiff after a mistrial.

The government moved to dismiss the complaint and the Court granted the motion on February 22, 2016. ECF No. 11. A claim for negligent misrepresentation was dismissed because as a matter of law the federal government has not waived sovereignty to such suits. The Court next dismissed a claim for negligent investigation, because such a claim does not exist under Washington law (with the exception of investigations into child safety). Finally, the Court dismissed a claim for negligence on the part of the agents who investigated Plaintiff, on the grounds that when the alleged harm from negligence is a criminal case, the harm is triggered by the decision to prosecute, and such decisions are immune to suit.

The Court dismissed the entirety of the first complaint and granted leave to amend. Plaintiffs filed an amended complaint on April 6, 2016, within the time frame granted by the Court, alleging a claim for malicious prosecution. ECF No. 12 at 10. The government moved to dismiss on May 13, 2016. ECF No. 18.

//
//
//
//
//

# FACTS[1]

In 2003, Plaintiffs Jeffrey and Vicki Gordon, who grow crops, bought USDA insurance, set up by the USDA Risk Management Agency ("RMA"), called Adjusted Gross Revenue Insurance ("AGRI"). In short, the insurance was meant to protect growers who suffered crop losses. Plaintiffs grew various crops in 2003, and purchased AGRI insurance again in 2004. The implementation and oversight of AGRI was poorly managed by RMA, and the program eventually faced large losses.

After Plaintiffs suffered qualifying crop losses in 2003 and 2004, they filed fully documented claims for AGRI coverage with RMA. RMA had the opportunity to investigate the claims. The claims were not resolved, and Plaintiffs took RMA to arbitration in 2005. This arbitration provided an opportunity for more discovery. The Plaintiffs won an award at arbitration, and Plaintiffs' insurers asked Plaintiffs to sign a release of all claims, which was reviewed by RMA. Plaintiffs did so in 2005. Under the release, Plaintiffs received an additional indemnity of $88,933. Ultimately the AGRI crop insurance program paid out millions of dollars of claims, more than was anticipated when the program was founded. Plaintiffs allege that RMA refused to accept responsibility for a poorly designed and executed AGRI program, and intended to deflect criticism on the program onto those who purchased policies.

A federal grand jury convened in Yakima, Washington in July 2005 to investigate whether growers had created a conspiracy to defraud the AGRI program. Steven Tillotson, a special agent for the Office of Inspector General of the USDA, testified that he discovered a conspiracy between Norkotah potato

---

[1] On a motion to dismiss, all facts taken from the complaint are assumed true. *Wyler Summit P'ship v. Turner Broad. Sys., Inc.*, 135 F.3d 658, 661 (9th Cir. 1998). However, when a motion to dismiss is filed on jurisdictional grounds, the Court may consider other factual allegations and evidence without converting the motion to dismiss into one for summary judgment. *Robinson v. United States*, 586 F.3d 683, 685 (9th Cir. 2009). The following facts are gleaned from the complaint and the sworn affidavits filed by Defendant and by Plaintiffs for this motion.

growers (including Plaintiff Jeffrey Gordon), buyers, packers, and insurance agent Fred Ackerman to defraud the AGRI insurance program by overvaluing Norkotah potatoes. Plaintiffs allege that Tillotson "got Plaintiff Jeff[rey] Gordon indicted based on incomplete and false and misleading testimony. Tillotson knew/clearly should have known that Jeff Gordon hadn't done anything wrong." ECF No. 12 at ¶ 2.15:8-10.

On January 11, 2011, the grand jury indicted Plaintiff Jeffrey Gordon on two counts: (1) participating in the general conspiracy; and (6) making a false claim against North Central Crop Insurance Co. The case proceeded to trial, where the court dismissed count one under Fed. R. Crim. P. 29, and granted Plaintiff's motion for acquittal on count six. The court stated that "there was no evidence that [Plaintiff] anticipated, controlled, or manipulated the loss he suffered to his non-potato crops." *Id.* at ¶ 2.22:14-15.

Plaintiffs further aver that Tillotson presented no evidence at trial that inculpated Plaintiff Jeffrey Gordon on the charge that he caused losses to his own crops in 2003 or 2004. Further, Plaintiffs allege that Tillotson knew or should have known that Plaintiffs could make no Norkotah potato crop loss claim unless Plaintiffs suffered losses on other crops grown that year, and that Plaintiffs did indeed grow other crops in the years in question.

Plaintiffs conclude that Tillotson should have known that "it was impossible for [Plaintiffs] to have had a loss claim under their AGRI coverage for Norkotah variety potatoes in 2003," *id.* at ¶ 2.25:4-6, because Plaintiffs presented evidence to the USDA that they only grew Russet Burbank potatoes in 2004, not Norkotah potatoes. Despite this, Tillotson "took his false claims before the grand jury and ultimately obtained an Indictment." *Id.* at ¶ 2.27:14-16.

In a sworn declaration, Tillotson states that he began investigating Plaintiff Jeffrey Gordon pursuant to authority under 7 U.S.C. § 1170 to conduct criminal investigations of suspected felony violations of federal statutes under the USDA's

authority. Though directed to conduct investigations with the intent to prevent and detect fraud within USDA programs, Tillotson states that he determined, based on independent discretion, that there were reasonable grounds to refer Plaintiff Jeffrey Gordon for prosecution by the United States Attorney's Office.

According to Tillotson, these grounds included contracts which only listed rejection prices for Norkotah potatoes which, in his judgment, were suspiciously low. *See* ECF No. 19 at 6:1-6. Tillotson also believed Plaintiff Jeffrey Gordon's 2003 farm report contained suspicious prices. After referring the case to federal prosecutors, he continued the investigation through interviews, undercover work, and the collection and analysis of various records.

At the grand jury hearings, Tillotson testified that Plaintiff Jeffrey Gordon presented suspicious contracts for Norkotah potatoes similar to others who would be indicted in the conspiracy. Tillotson testified that Plaintiff Jeffrey Gordon's proposed contract to sell Norkotah potatoes to Tri-Cities Produce, Inc. for processing was unusual, because of very high requirements for specific gravity and bruise-free rates. He also testified that if the potatoes failed to meet these requirements, the growers, including Plaintiff Jeffrey Gordon, would be required to sell the potatoes at a steep loss, and that this came to pass.

The grand jury returned an indictment against Plaintiff Jeffrey Gordon on January 11, 2011, and superseding indictments on November 8, 2011 and February 6, 2013.

## APPLICABLE STANDARDS

While considering a motion to dismiss on jurisdictional grounds, all of Plaintiff's factual claims are taken as true and considered in the light most favorable to Plaintiff. *Wyler Summit P'ship*, 135 F.3d at 661. Still, the Court may consider evidence beyond the pleadings; declarations or other evidence bearing on jurisdiction are allowed without converting the motion to dismiss into a motion for

summary judgment. *Robinson*, 586 F.3d at 685. When challenged, the plaintiff bears the burden of showing jurisdiction exists by a preponderance of the evidence. *Id.*

summary judgment. *Robinson*, 586 F.3d at 685. When challenged, the plaintiff bears the burden of showing jurisdiction exists by a preponderance of the evidence. *Id.*

The Federal Tort Claims Act provides for suit against the United States, a sovereign; a sovereign may be sued only when it has expressly consented to such suit, strictly construed. *Dunn & Black P.S. v. United States*, 492 F.3d 1084, 1087-88 (9th Cir. 2007). "Absent a waiver of sovereign immunity, [federal] courts have no subject matter jurisdiction over cases against the federal government." *Munns v. Kerry*, 782 F.3d 402, 412 (9th Cir. 2015).

Plaintiffs must state a claim for relief that is facially plausible. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Threadbare recital of elements with conclusory allegations will not suffice. *Id.* A plaintiff's facts as set in the pleadings are taken as true. *Halet v. Wend Inv. Co.*, 672 F.2d 1305, 1309 (9th Cir. 1982). The Court can deny leave to amend, which is liberally granted, only when no set of facts could set a claim for relief. *Miller v. Rykoff-Sexton, Inc.*, 845 F.2d 209, 214 (9th Cir. 1988).

## ANALYSIS

*Federal Tort Claims Act and the Discretionary Function Exception.*

The FTCA, 28 U.S.C. § 1335, allows plaintiffs to bring suit against the federal government under the tort law of the state where allegedly tortious conduct occurred. *FDIC v. Meyer*, 510 U.S. 471, 478 (1994). Because the federal government is a sovereign, suits against it must be specifically allowed by waiver of sovereign immunity. *Dunn & Black P.S. v. United States*, 492 F.3d 1084, 1087-88 (9th Cir. 2007). If there is no specific waiver of sovereign immunity, there is not merely a lack of a meritorious claim; rather, the Court does not have subject matter jurisdiction to hear the case. *Munns*, 782 F.3d at 412.


Generally, the FTCA does not allow for malicious prosecution claims against the United States. 28 U.S.C. § 2680(h) ("The provisions of this chapter and section 1346(b) of this title shall not apply to . . . [a]ny claim arising out of . . . malicious prosecution . . ."). However, claims of malicious prosecution may be brought "with regard to acts or omissions of investigative or law enforcement officers." *Id.* Washington law recognizes a tort for malicious prosecution, where "(1) the prosecution claimed to have been malicious was instituted or continued by the defendant; (2) that there was want of probable cause for the institution or continuation of the prosecution; (3) that the proceedings were instituted or continued through malice; (4) that the proceedings terminated on the merits in favor of the plaintiff, or were abandoned; and (5) that the plaintiff suffered injury or damage as a result of the prosecution." *Gem Trading Co. v. Cudahy Corp.*, 92 Wn.2d 956, 962-63 (1979).

It is sufficient for Plaintiffs to allege a malicious prosecution claim against an investigator such as Tillotson rather than a prosecutor; "in fact, those who procure malicious prosecutions are usually the only potential defendants because . . . prosecutors enjoy absolute immunity. In order to find that a defendant procured a prosecution, the plaintiff must establish a chain of causation linking the defendant's actions with the initiation of criminal proceedings." *Moore v. Hartman*, 102 F. Supp. 3d 35, 101 (D.D.C. 2015) (internal citations and quotations omitted).

Plaintiffs have alleged such a claim, based on Washington law, where the allegedly tortious conduct took place in Washington. But when directed at federal employees, malicious prosecution claims must overcome the discretionary function exception, which bars claims against federal employees exercising discretionary functions left to them through regulation or statute. 28 U.S.C. § 2680(a); *Moore*, 102 F. Supp. 3d at 101. If the exception applies, the Court lacks jurisdiction and must dismiss the case, even if the conduct in question was an

abuse of discretion or constituted an intentional tort. *Wright v. United States*, 719 F.2d 1032, 1035 (9th Cir. 1983).

The Supreme Court has held that to determine whether a federal agent's conduct falls within the discretionary function analysis, a district court must first determine whether the conduct involves an element of judgment or choice, *United States v. Gaubert*, 499 U.S. 315, 322 (1991), and second, whether considerations of public policy are involved, *id.* at 323. This includes "social, economic, or political" policies. *Gasho v. United States*, 39 F.3d 1420, 1435 (9th Cir. 1994). The Court "examine[s] the nature of the Government's action [or alleged omissions] and decide[s] whether it is susceptible to policy analysis under an objective assessment." *Gonzalez v. United States*, 814 F.3d 1022, 1032 (9th Cir. 2016).

Though at one point the Ninth Circuit held that a federal agent's conduct in implementing a decision to prosecute was susceptible to judicial analysis, *Wright v. United States*, 719 F.2d 1032, 1035 (9th Cir. 1983), the court has reversed course since then. Now, "an act is shielded from liability if judicial second-guessing would interfere with the federal employee's exercise of independent policy judgments." *Gasho*, 39 F.3d at 1435.

*Relevant Law and Judgment or Choice Factor.*

The Court concludes that Tillotson's actions involved the exercise of protected discretion because his conduct involved judgment or choice. Investigations into potentially criminal conduct are the prototypical discretionary conduct generally protected from tort claims, and the relevant law allows agents in Tillotson's position to exercise their discretion in referring criminal charges to federal prosecutors.

These relevant laws include 5 U.S.C. app. 3 § 2-3, which grants inspectors general and their staffs the ability to conduct audits and investigations relating to

programs within their departments; and 5 U.S.C. app. 3 § 4, which requires inspectors general and their staffs to refer to the Attorney General any matters which show reasonable[2] grounds for the violation of federal criminal law. Additionally, 7 C.F.R. §§ 2.33 & 2610.1 grant the inspectors general of the USDA a number of duties and responsibilities to study, recommend and report on various areas and topics related to the USDA which "in the judgment of the I[nspector] G[eneral], [are] necessary or desirable." 7 C.F.R. § 2610.1(c)(4)(iii).

Together, these regulations and statutes grant the agents of the inspector general broad discretionary authority[3] to conduct investigations on agency-related programs and, when reasonable grounds are present in their judgment, to refer matters for criminal prosecution. The Court concludes that these guidelines present space for discrete actions, and thus a "strong presumption arises that the [agent's] actions were grounded in policy considerations." *Gonzalez*, 814 F.3d at 1032. *See also Sabow*, 93 F.3d at 1452.

Here, the "causal link[s] between the defendant's actions and the initiation of criminal proceedings must be established without taking into account those actions protected by the discretionary function exception." *Moore v. Hartman*, 102 F. Supp. 3d 35, 101 (D.D.C. 2015) (citing 28 U.S.C. § 2680(a)). Allegations against Tillotson must be examined individually to see if any conduct is separable from protected discretionary decisions.

Tillotson exercised discretion in acting under these laws and regulations when investigating Plaintiff and recommending criminal prosecution. After

---

[2] The very use of the term "reasonable" indicates that an agent must exercise judgment in determining what matters to refer.

[3] Though some of the duties assigned to the inspector general are cast in mandatory language, *see, e.g.*, 5 U.S.C. app. 3 § 4(d) ("The Inspector General *shall* report . . .") (emphasis added), the language leaves room for judgment in deciding what to refer, and stray mandatory language does not undo the essential discretionary nature of the grant of power. *Sabow v. United States*, 93 F.3d 1445, 1452 (9th Cir. 1996).

receiving whatever information or intelligence which led him to begin looking into the alleged crop insurance conspiracy, Tillotson conducted an investigation into Plaintiffs and others under the authority granted to the office of the Inspector General. His judgment was used in determining what information to gather, who to interview, what records to subpoena, and in determining whether the collected data indicated that the conduct under investigation constituted criminal acts. Tillotson used his judgment in determining whether reasonable grounds existed to refer criminal charges to federal prosecutors. Decisions on prosecution are "generally committed to an agency's absolute discretion." *Heckler v. Chaney*, 470 U.S. 821, 831 (1985). Further, Plaintiffs allege no specific conduct in the chain of Tillotson's investigation which could be separable from protected conduct. *Moore*, 102 F. Supp. 3d at 101. At no step in the chain of action that led to prosecution is it sufficiently alleged that Tillotson did not engage in a discretionary function.

This conclusion is firmly rooted in the law. "The discretionary function exception protects agency decisions concerning the scope and manner in which it conducts an investigation," as long as a mandatory directive is not violated. *Vickers v. United States*, 228 F.3d 944, 951 (9th Cir. 2000). Further, "where the allegation of improper investigatory conduct is inextricably tied to the decision to prosecute and the presentation of evidence to the [g]rand [j]ury, the discretionary function applies and preserves governmental immunity." *Moore v. Valder*, 65 F.3d 189, 196-97 (D.C. Cir. 1995).

Here, Plaintiffs raise issue with Tillotson's grand jury testimony, where that testimony helped contribute to an indictment. Tillotson's testimony also led federal prosecutors to seek an indictment in the first place. Because of the close nexus between Tillotson's testimony and the decision to prosecute, Tillotson's investigation falls under the discretionary conduct prong of the *Gaubert* test. Additionally, there is no allegation that mandatory directives were violated, or that Tillotson's investigation was in any way limited, pre-ordained, or constrained by

mandatory rules or regulations. Further, the decisions on what witnesses to call at a grand jury hearing, what evidence to present, and what testimony to elicit, are protected and discretionary decisions. *Imbler v. Pachtman*, 424 U.S. 409, 430 n.33 (1976).

*Policy Analysis Factor.*

The Court next considers, under an objective standard, whether economic, social, or political policy considerations underlay the criminal investigation and the decision to prosecute, and thus if "judicial second-guessing would interfere with the federal employee's exercise of independent policy judgments." *Gasho*, 39 F.3d at 1435. "Investigations by federal law enforcement officials . . . require investigative officers to consider relevant political and social circumstances in making decisions about the nature and scope of a criminal investigation." *Sabow*, 93 F.3d at 1453. *See also Gonzalez,* 814 F.3d at 1032 ("The investigation of crime involves policy judgments at the core of the executive branch . . . [T]he executive must consider the reliability of the information, the relative importance of the crime, and the agency's mission and resources."). Indeed, preparing to indict an individual requires the "obtaining, reviewing, and evaluating of evidence," where agents must make decisions on "a wide variety of sensitive issues." *Imbler*, 424 U.S. at 431 n.33.

Tillotson's investigation fell within this standard. He led a far-ranging investigation that touched on USDA insurance policy and the economic market for various sorts of potatoes and insurance with detailed analysis of the economic relationships between growers and processors. The investigation also implicated certain scientific principles in the potato processing industry, such as an analysis of the specific gravity and bruise rates of particular varietals of potato. The fact that Tillotson conducted the investigation in a region where agriculture is a major industry means that social and political considerations were taken as well.

1  In investigating these issues, Tillotson exercised discretion in what
2 witnesses to contact, what records to subpoena, and which matters to refer to
3 federal prosecutors. These actions were quintessentially discretionary and steeped
4 in policy considerations, and thus are immune from tort suit under the
5 discretionary function exception. *Gonzalez*, 814 F.3d at 1032. Further, his conduct
6 before the grand jury falls under the exception because of the closely intertwined
7 connection between his investigation and the decision of federal prosecutors to
8 initiate a criminal case. *Valder*, 65 F.3d at 196-97.

9  Plaintiffs cite Washington case law to argue that because Tillotson allegedly
10 did not disclose potentially exculpatory information to the grand jury, an issue of
11 material fact precludes dismissal of this case. Plaintiffs indicate that Tillotson
12 neglected to inform the grand jury, or possibly the petit jury at trial, that Plaintiffs
13 suffered crop losses other than Norkotah variety potatoes in 2003, and that
14 Plaintiffs did not grow Norkotah variety potatoes in 2004.

15  Though Plaintiffs are correct that a prosecution witness' failure to provide a
16 full disclosure of all facts and circumstances within his knowledge creates an issue
17 of material fact on the element of malice in a claim for malicious prosecution in
18 Washington, *Peasley v. Puget Sound Tug & Barge Co.*, 13 Wn.2d 485, 499-500
19 (1942), the question at issue here is whether Tillotson's investigation and
20 testimony to the grand jury satisfied the *Gaubert* test or else involved egregious
21 conduct, and thus clears the jurisdictional hurdle of section 2680(a). As discussed
22 above and below, they do not.

23  Additionally, the issue in *Bender* revolved around a prosecuting witness'
24 full disclosure to the prosecuting attorney in the course of an investigation. *City of*
25 *Seattle v. Bender*, 99 Wn.2d 582, 595-96 (1983). Here, the question is whether
26 Tillotson's testimony to the grand jury fell outside the broad discretion allocated
27 to federal prosecutors on deciding what witnesses to present, what questions to
28 ask, and what exhibits to show to grand jurors. *Valder*, 65 F.3d at 196-97. The

above-cited Washington State cases did not have to clear the high bar of the discretionary function exception which malicious prosecution claims against the sovereign federal government must clear. Because the preponderance of the evidence indicates that Tillotson's investigation and grand jury testimony were discretionary and susceptible to policy analysis, the Court lacks jurisdiction to hear the case under 28 U.S.C. § 2680(a).

*Egregious Conduct.*

Finally, the allegedly malicious conduct does not meet the standard of egregious conduct necessary to defeat the otherwise applicable discretionary function exception. Typical egregious conduct includes suborning perjury, *Limone v. United States*, 271 F. Supp. 2d 345 (D. Mass. 2003); *Reynolds v. United States*, 549 F.3d 1108, 1113 (7th Cir. 2008) ("[A] federal investigator's decision to lie under oath is separable from the discretionary decision to prosecute."); and violating the law or agency guidelines, *Litif v. United States*, 682 F. Supp. 2d 60, 81 (D. Mass. 2010). The allegations that Tillotson or federal prosecutors did not inform the grand or petit jury of potentially exculpatory information falls short of that standard.

If Tillotson gave "false and misleading testimony," as Plaintiffs allege, ECF No. 12 at ¶ 2.15:8-10, their claim could possibly overcome the standard. But Plaintiffs' cite no testimony by Tillotson as affirmatively false or misleading, despite having access to the grand jury transcripts of the initial criminal case. The bulk of Plaintiffs' averments in the complaint are that Tillotson did or not present certain evidence at trial. As stated above, though, witnesses do not get to decide what information is extracted from them at trial; federal prosecutors, or the defendant's attorneys, do, through their examination or cross-examination. Even conduct that abuses discretion would be precluded from suit under the FTCA; the conduct alleged against Tillotson falls short. *See Moore*, 65 F.3d at 197 (holding

that the decision to prosecute and presenting grand jury evidence is discretionary and dismissing claims that government investigators "concealed and distorted exculpatory evidence to create a false impression of what [they] knew about [] fraud schemes . . ."); *Wright v. Linhardt*, No. CV 98-1555-ST, 2000 WL 92810, at *12 (D. Or. Jan. 18, 2000) (conduct stemming from decision to criminally prosecute and present certain evidence to grand jury exempt from FTCA).

## CONCLUSION

Special Agent Tillotson's investigation consisted of discretionary acts of criminal investigation and involved areas of public policy, exercised in the judgment of the executive branch. Therefore, the discretionary function exception to the Federal Tort Claims Act is applicable, and deprives this Court of subject matter jurisdiction. The claim is **dismissed with prejudice**, as there appears to be no set of facts that Plaintiff could plead that could allow liability. Because there is no subject matter jurisdiction, the Court does not consider whether Plaintiffs alleged a claim upon which relief may be granted.

//
//
//
//
//
//
//
//
//
//
//
//

Accordingly, **IT IS HEREBY ORDERED:**

1. Defendant's Motion to Dismiss, ECF No. 18, is **GRANTED**. The claim is dismissed **with prejudice**.

**IT IS SO ORDERED.** The District Court Executive is hereby directed to file this Order, provide copies to counsel, and **CLOSE** the file.

**DATED** this 15th day of September, 2016.



Stanley A. Bastian
United States District Judge